# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PHOENIX LICENSING, L.L.C., ET AL. § | |
| § | Case No. 2:13-cv-1093-JRG-RSP |
| v. § | |
| GENERAL MOTORS, LLC § | |

## MEMORANDUM ORDER

Before the Court is General Motors, LLC ("GM") Motion to Transfer Venue to the Eastern District of Michigan (Dkt. No. 18, filed April 29, 2014, "Motion to Transfer"). In its Motion to Transfer, GM argues that the Eastern District of Michigan is a clearly more convenient forum for this case. Plaintiffs Phoenix Licensing, LLC and LPL (collectively, "Phoenix") oppose transfer. After considering all of the record evidence and weighing the various factors, the Court finds that GM has failed to carry its burden of showing that the Eastern District of Michigan is a clearly more convenient venue for this case.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Phoenix Licensing, LLC is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona. (Dkt. No. 1 at ¶ 5.) LPL is a Delaware limited liability company with its principal place of business in Scottsdale, Arizona. (*Id*. at ¶ 6.) On December 11, 2013, Phoenix filed this suit against General Motors, LLC ("GM"), a Delaware limited liability corporation headquartered in Detroit, Michigan. (Exh. A, Dkt. No. 18-1 ("Heisel Decl.") at ¶ 2.) On February 6, 2014, Phoenix amended its original complaint against GM (Dkt. No. 15.), accusing GM of infringing U.S. Patent No. 5,987,434; U.S. Patent No. 7,890,366; and U.S. Patent No. 8,352,317 (collectively, "Patents-in-Suit"). (*Id*.) GM now moves the Court pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Eastern District of Michigan. (Dkt. No. 18.)

**APPLICABLE LAW**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly

more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

### A. Proper Venue

Neither party disputes that venue is proper either in the Eastern District of Texas or the Eastern District of Michigan as to Phoenix and GM.

### B. Private Interest Factors

#### 1. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* Wright & Miller, *Federal Practice and Procedure* § 3851. "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key

witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343–44.

GM's motion identifies eight potential party witnesses and five potential third-party witnesses (working for third-party vendor Acxiom Corporation "Acxiom"), all of whom purportedly work and reside within the Eastern District of Michigan. (Mot. at 8) (citing Heisel Decl. at ¶¶ 6–8). Moreover, GM identifies one adverse party witness, Mr. Richard Libman, whom it identifies upon information and belief as residing in Scottsdate, Arizona. Based on these witnesses in particular, GM concludes the cost of attendance "strongly favors transfer." (Mot. at 9.)

For its part, Phoenix argues GM places undue weight on the number of party witnesses it identified due to the significant overlap of job responsibilities and further contends that GM has failed to establish that the third party vendor witnesses would be necessary for trial. (Opp. at 9–10.) Phoenix additionally argues that convenience to its third-party witnesses—such as, for example, Shawn Diedtrich, a practitioner with knowledge of the prosecution history of the Patents-in-Suit—weighs against transfer given those witnesses' obligations to attend trial in the Eastern District of Texas for the remaining related cases currently consolidated into the lead case of the instant suit. (*Id.* at 10.)

Although it appears that it would be more convenient to GM's *own* party witnesses to transfer the case to the Eastern District of Michigan, the same cannot be said of Phoenix's party witnesses. And even though party witnesses do play a role in the transfer analysis, the cost of attendance to third-party witnesses dominates the analysis here. Regarding the Acxiom employees, other than general statements regarding these witnesses' responsibilities for "direct marketing activities," GM sets forth little, if any, actual evidence beyond attorney argument as to

the relative importance these witnesses will play in this case. Phoenix's arguments and evidence fail for the same reasons.

In light of the foregoing, and given that GM has been unable to meet its burden in demonstrating the cost of attendance for willing witnesses clearly favors transfer, the Court concludes this factor is neutral or weighs only slightly in favor or transfer.

### 2. Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

GM's motion states that "the General Motors employees involved in the direct marketing activities at issue all work in General Motors' headquarters in Detroit, and they keep any documents relating to their direct marketing responsibilities in Detroit." (Mot. at 9) (citing Heisel Decl. at ¶ 6). Moreover, GM states that "all of the relevant documents in General Motors' possession, custody or control appear to be in Detroit." (*See id.*) (citing Heisel Decl. at ¶ 9). Finally, GM is unable to definitively state, through its chosen declarant's knowledge, whether or not such documents exist in the Eastern District of Texas. (*See* Heisel Decl. at ¶ 9) ("*I do not believe* there are any such documents in the Eastern District of Texas.") (Emphasis added).

Equally, Phoenix proffers evidence of *some* relevant documentation physically located within the Eastern District of Texas. *See, e.g.*, (Dkt. 19-1 ("Libman Decl.") at ¶ 3) (discussing corporate and intellectual property-based documentation located in Tyler, Texas). Because both Plaintiff and Defendant have merely illustrated that some of its documentation is located within the transferor and transferee districts, respectively, this factor neither weighs for or against transfer.

Accordingly, evaluated as a whole, this factor is neutral as well.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. FED. R. CIV. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a). Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

GM identifies five witnesses it contends are outside of the subpoena power of the Eastern District of Texas, but within the subpoena power of the Eastern District of Michigan. (Mot. at 10.) The third-party witness GM identifies, along with potential third-party witnesses it represents Plaintiff will likely rely upon, are neither located in Texas nor Michigan. (*Id*. at 3 and 8–9.) For its part, Phoenix does not specifically identify any third-party witnesses located within the Eastern District of Texas.

By GM's own admission, the five third-party witnesses identified to be within the subpoena power of the Eastern District of Michigan—and outside the subpoena power of the Eastern District of Texas—are the same witnesses identified in GM's discussion of its *willing* witnesses. (*See* Mot. at 7–9) (identifying the five Acxiom witnesses under the heading, "The Cost of Attendance for *Willing* Witnesses . . . .") (emphasis added); (Heisel Decl. at ¶ 8.) The fact that GM concedes that these witnesses are willing witnesses limits their probative value in the analysis related to *compulsory* process.

Accordingly, evaluated as a whole, this factor is neutral.

    **4.    All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive**

Under this prong, GM argues the judicial economy does not clearly favor either venue. (Mot. at 10–12.) In response, Phoenix argues judicial economy weighs against transfer on multiple grounds. (*See, e.g.*, Opp. at 11–13) (arguing, for example, the number of related cases to the instant suit consolidated for pre-trial purposes weighs against transfer due to the "substantial overlap in issues of fact and law.") Moreover, Phoenix correctly points out that prior to the filing of GM's Motion to Transfer, the Court held a scheduling conference at which time the parties' were provided with tentative dates for a *Markman* hearing and jury selection. (*Id.*) Additionally, prior to completion of briefing on GM's Motion to Transfer, a docket control order, discovery order, and notices of mediator were entered in this case. (*Id.*)

Phoenix additionally cites to thirteen past patent infringement suits involving patents that overlap with the related, consolidated cases, some of which claim construction has been completed. (*See generally* Dkt. No. 19-2 ("Wang Decl.")). In its reply, it does not appear GM contests this factor weighs against transfer. (*See* Reply at 3) ("The only private interest factor that even arguably supports Plaintiffs' position is judicial economy . . . ."). Rather, GM only appears to dispute *to what degree* the factor weighs against transfer. (*See id.*) (" . . . Plaintiffs substantially overstate their case.")

Evaluating all the considerations under this prong, the Court finds the factor weighs against transfer. As Phoenix correctly notes, the previously filed lawsuits involve an overlap of issues in fact and law such that judicial economy would not be best served through transfer. Moreover, prior to the completion of briefing on the Motion to Transfer, the parties agreed to dates for jury selection and claim construction, along with all other dates set in the parties'

Docket Control Order. (Dkt. No. 139, *Case No. 2:13-cv-01081-JRG-RSP*.) Finally, regarding Plaintiff's argument that the number of related cases consolidated for pretrial purposes weighs in favor of transfer, although the Court will not accord dispositive weight to this fact, it must be considered when determining how transfer would affect the overall judicial economy. By evaluating all the foregoing considerations under this heading as a whole, the Court determines judicial economy under the specific facts and evidence presented by the parties would be adversely affected.

Accordingly, the Court finds this factor weighs against transfer.

**C.     Public Interest Factors**

**1.     Local Interest in Having Localized Interests Decided at Home**

GM argues the Eastern District of Michigan has a local interest in this case due to GM's "prominence in the Detroit community and its recognized role as a leader in the Detroit-based U.S. automotive industry . . . ." (Mot. at 12.) To the extent GM's position is staked upon a connection not to "the events that gave rise to this suit," as suggested by *In re Volkswagen II*, but rather a connection of some residents of the Eastern District of Michigan, financial or otherwise, to GM itself, the Court notes that this raises troubling fairness implications and affords it little weight. 545 F.3d at 318. Indeed, while the concentration of GM's corporate activities may take place in or near the Eastern District of Michigan, it is indisputable that GM has a significant commercial presence across the country and in this District.

Moreover, GM contends "Plaintiffs' patent infringement accusation necessarily 'calls into question the work and reputation of several individuals residing in or near that district who presumably conduct business in that community,' including all the named General Motors and vendor employees that work and reside there." (Mot. at 13) (citations omitted). Even assuming this to be true, the Court is not persuaded that this fact favors transfer for several reasons. First,

the same may be said about Phoenix within this District. For example, Phoenix proffered evidence that it maintains an office within the Eastern District of Texas. (Libman Decl. at ¶ 3.) Although the record reflects that GM employs more employees within Eastern District of Michigan than Phoenix does within the Eastern District of Texas, it equally follows that the outcome of this proceeding will have a direct impact on Phoenix and Phoenix's reputation as well within this District given its ties to the Eastern District of Texas.

Second, GM's reputation-based arguments as to the Eastern District of Michigan are belied by its strong nationwide presence and its significant ties to Texas. *See, e.g.,* (Wang Decl. at ¶ 9) (marshalling significant evidence of GM's operational- and advertising-based activities within Texas, and specifically, evidence of GM's activities within the Eastern District of Texas). Indeed, with such a strong presence within this and other Texas districts, the impact of this suit on GM would equally apply to this District as well.

Accordingly, in view of the foregoing, this factor is neutral.

2. **Administrative Difficulties Flowing From Court Congestion, Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

The Court finds that the remaining public interest factors are neutral. Indeed, throughout the briefing, the parties concede that the remaining three factors are neutral. *See, e.g.* (Mot. at 13–14) ("With respect to 'administrative difficulties caused by court congestion' . . . . [t]his factor is . . . neutral."); (*id*. at 14) ("These last two public interest factors thus have no bearing on the transfer issue."); (Opp. at 14) ("LPL agrees that the remaining public factors (time to trial, familiarity with the governing law, and conflicts of law) are neutral.").

## CONCLUSION

A motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). After weighing the evidence as a whole, the Court finds that this is not such a situation. One factor weighs against transfer and most factors are neutral. Only one factor weighs in favor of transfer. On balance, GM has fallen short of meeting its burden to show that the Eastern District of Michigan would be a clearly more convenient forum than the Eastern District of Texas. Accordingly, GM's Motion to Transfer Venue (Dkt. No. 18) is **DENIED**.

**SIGNED this 29th day of March, 2015.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE